# Cake *versus* Cake.

1. Where a feigned issue is awarded as ancillary to a suit or proceeding in the same court or in another court, the judgment in the feigned issue cannot be reviewed by writ of error until after final judgment or decree in the principal cause.

2. Pending certain actions of scire facias to revive judgments, the court awarded a feigned issue to try the question whether the assignment of said judgments to the use of plaintiff was absolute or as collateral security for money advanced by him to enable the defendants to compromise the judgment debts with the original plaintiffs. A verdict and judgment for plaintiffs having been entered in the feigned issue,

[Cake *v.* Cake.]

the defendant therein sued out a writ of error to said judgment pending the said actions of scire facias.

*Held*, that said writ of error was prematurely taken, and it was therefore quashed.

May 1, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN JJ.   CLARK, J., absent.

ERROR to the Court of Common Pleas of *Northumberland county*: Of July Term, 1883, No. 153.

Feigned issue.—The material facts of this case were as follows: The Northumberland County Bank, for the use of Wm. H. M. Oram, recovered four certain judgments against J. Adam Cake, administrator of Joseph W. Cake, deceased, which judgments were, by writings filed, in 1881, duly assigned to the use of Joseph W. Cake, who subsequently issued writs of scire facias on each of said judgments, to revive the same, against said J. Adam Cake, administrator, with notice to the heirs and legal representatives of said Joseph W. Cake, deceased.   Certain of said personal representatives filed special pleas to said writs of sci. fa., averring, in substance, that said Joseph W. Cake was not the absolute owner of said judgments, but held the same, by assignment, as collateral security for certain sums advanced by him to J. Adam Cake, administrator, and paid, in compromise settlement of the indebtedness of Joseph W. Cake (deceased) to said bank, plaintiff in the judgments.

One of the said actions of scire facias to revive came on for trial December 21, 1882, whereupon the defendants, suggesting to the court, that all the cases involved the same issue, moved that said actions be consolidated, or that an order be made whereby all the special matters alleged in defence could be properly tried; whereupon the court withdrew a juror, and made the following order, directing a feigned issue, under all the said four cases, to try the several matters averred in the special pleas, to wit:

" And now, December 22, 1882, it is ordered that a feigned issue be framed to try the question in dispute in regard to the above stated judgments, to wit: whether the comptroller of the currency of the United States authorized and empowered William H. M. Oram, receiver of the Northumberland county National Bank, to compromise and settle amongst other claims, the said four above stated judgments for the sum of five thousand dollars, and whether the Court of Common Pleas of Northumberland county did not authorize the said William H. M. Oram, receiver as aforesaid to settle and compromise the said judgments for the said sum of five thousand dollars, and whether in pursuance of said authority, the said William H. M. Oram, receiver as aforesaid, did compromise and settle

the same, together with other claims, with J. A. Cake, administrator of J. W. Cake, deceased, the defendant in the said judgments, and whether J. W. Cake, a son of the said J. W. Cake, deceased, advanced the said sum of five thousand dollars for the said J. A. Cake, administrator of the said J. W. Cake, deceased, in order to settle and compromise the said judgments with other claims, in pursuance of the authority granted the said William H. M. Oram, receiver as aforesaid, by the said comptroller of the United States currency and the said court, and took an assignment of the said four judgments by the said William H. M. Oram, receiver as aforesaid, to him the said J. W. Cake, to secure him, the said J. W. Cake, on account of his said advancement of said sum of five thousand dollars. Wherein J. Adam Cake, administrator of Joseph W. Cake, deceased, James Lowry and Alice E. Lowry, his wife, Joseph S. Adam and Amy B. Adam, his wife, and J. Adam Cake are to be plaintiffs, and Joseph W. Cake is to be defendant."

The plaintiffs excepted to the above order.

The formal pleadings having been filed, the issue was tried before ROCKEFELLER, P. J., and a verdict was rendered for the plaintiffs, on which judgment was duly entered. The defendant thereupon took this writ of error. The assignments of error were to the order directing the feigned issue, and to rulings on evidence, answers to points, and portions of the charge.

*L. H. Kase*, for the plaintiff in error.

*W. Allen Jones (George Hill* with him), for the defendant in error, moved to quash the writ of error, on the ground that the judgment in the feigned issue was interlocutory, and the writ of error prematurely taken, citing: Commonwealth *v.* Mitchell, 30 P. F. S., 57; Christophers *v.* Selden, 4 Casey, 165; Reed's Appeal, 21 P. F. S., 378; Green *v.* Mills, 7 Out., 22.

Chief Justice MERCUR delivered the opinion of the court, May 12, 1884.

This was a feigned issue directed by the court, against the objection of the plaintiff in error, to ascertain substantially, whether he was the absolute owner of four several judgments against the father of the defendants, or whether he held them as collateral security for the payment of money advanced by him, when he procured an assignment of the judgments. On the trial of this issue the jury found the facts to be as averred by the defendants in error, that they were held as security only for the sum paid to the assignor.

Before the issue was ordered, the plaintiff in error had caused a scire facias to issue on each of said judgments. The cases were put at issue, and one of them came on for trial. The character of the defence being stated, and it appearing to be applicable to all the judgments, a juror was withdrawn, and the feigned issue was directed and framed. The validity of the judgments for their whole amount, in the hands of the former owner, is not now questioned. The contention is whether the plaintiff in error procured the assignment under such an agreement with the administrator of the defendant in the judgments, that he holds them only as security for the sum he advanced for the transfer thereof to him.

The first question which arises is whether a writ of error to the judgment in this feigned issue is not premature? No judgment has been rendered on either of those sci. fas. No order has been made whereby the right of the plaintiff to collect the whole amount of the judgments on which they issued, is denied. The issue directed by the court to inform its conscience, has been determined adversely to the plaintiff; yet no entry has been made on the record of those judgments consequent on the finding in the issue. The sum apparently due thereon to the plaintiff, remains unreduced of record. No order has been made forbidding the collection of any part thereof. If the plaintiff holds them merely as collateral security for the payment of $5,000, and interest, he is nevertheless entitled to retain them for their full amount until he is fully paid, and to take the steps necessary to retain the lien thereof. Before some definite action is taken, denying the right of the plaintiff to revive the judgments, or forbidding the collection of a part thereof, the case is not ripe for review by this court. Until some such action there is neither final judgment nor definitive decree affecting the rights of the plaintiff as owner of the judgments to their full amounts.

The authorities are not in entire harmony as to whether a writ of error will lie in feigned issues, and if it will lie, at what time?

A feigned issue is to inform the conscience of the court as to disputed facts. It was held in Neff et al. *v.* Barr, 14 S. & R., 166, that it may be so moulded as the discretion of the court dictates, and the mode in which it is done is not the subject of a writ of error; yet if error be committed in the trial of the issue, the party aggrieved has a remedy by writ of error.

In Baker *v.* Williamson, 2 Barr, 116, it was held that when a Court of Common Pleas, in deciding on a case under the chancery powers vested in it by Act of Assembly, directs an issue, error will not lie to the proceedings therein in a court

of law. It is there held where the case is purely a proceeding in chancery, and the chancellor directs an issue to inform his conscience, error will not lie. In that case the writ of error was quashed.

Again in Baker *v.* Williamson, 4 Id., 456, the contention was in regard to the effect of a verdict in an issue directed by the Common Pleas in an equitable proceeding. In answer to the argument that the verdict was conclusive, it was declared that the effect and function of a verdict in a court of equity is entirely different from a verdict in a case according to common law. A chancellor may disregard the verdict of the jury and decide the case according to his own convictions.

It was held in Commonwealth *v.* The Judges of the Court of Common Pleas, 4 Id., 301, that a writ of error will not lie to proceedings on a feigned issue directed by the Orphans' Court, to the Court of Common Pleas.

The right to a writ of error in such cases was afterwards given by the Act of 10th April, 1848. It was however held in Hallowell's Appeal, 8 Harris, 215, that the right of appeal from the final decree was not taken away by that Act, and on appeal from such decree to this court, that we had power to examine the whole proceeding.

In Ingraham *v.* Caricabura, 5 Barr, 177, it was held that a writ of error does not lie to a judgment on a feigned issue directed and tried by the Common Pleas to determine the right of an assignee for creditors, to be allowed for advances and expenses on account of the estate, after he had been removed by order of court.

It was said in Christophers *v.* Selden, 4 Casey, 165, that the practice of suing out writs of error upon feigned issues, was not to be encouraged.

In Brown *v.* Parkinson, 6 P. F. S., 336, it was held that a writ of error will lie in a judgment in a feigned issue to try whether a judgment was confessed to hinder delay or defraud creditors.

It was held in Reed's Appeal, 21 Id., 378, although the Act of Assembly expressly gives a writ of error in an issue to try a question of fact in the distribution of the proceeds of a sheriff's sale, yet the writ does not lie until after final decree. So it was held in Green *v.* Mills, 7 Out., 22, that the writ of error authorized by Act of 10th April, 1848, in a feigned issue directed by the Orphans' Court, does not lie until final decree has been entered in that court. The reason is, that the determination of fact found in the Common Pleas is not necessarily binding on the Orphans' Court; but that an appeal from the decree of distribution, and a writ of error to

[Goersen v. Commonwealth.]

the judgment in the feigned issue, may be brought at the same time.

Thus it is shown the weight of authority is that whenever the judgment in a feigned issue is for the purpose of influencing the action of the same court, or another court, in making an order or decree affecting another judgment or claim, the suing out of a writ of error in the feigned issue should be postponed until after final order or decree has been made. After such final action, the party aggrieved may bring up the case in proper form for review, and then we may examine into the correctness of the manner in which the final judgment or decree was arrived at.

We therefore hold that this writ of error issued prematurely.

Writ quashed.